# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK E. LONG, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 17-1147 |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| NANCY A. BERRYHILL, | ) | ECF Nos. 10 and 12 |
| *Acting Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

### I. INTRODUCTION

Mark E. Long ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* ("Act"). This matter comes before the court on cross motions for summary judgment. (ECF Nos. 10, 12). The record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment will be DENIED, and Defendant's Motion for Summary Judgment will be GRANTED.

### II. PROCEDURAL & FACTUAL BACKGROUND

Plaintiff applied for DIB on November 26, 2013, claiming a disability onset of March 30, 2009. (R. at 164 – 65, 175)[1]. Plaintiff claimed that his inability to work was a consequence of limitations stemming from obesity, diabetes, hypertension, degenerative joint disease, and bone spurs. (R. at 178). Plaintiff was born on May 28, 1967, was forty-one years of age at the time of

---

[1] Citations to ECF Nos. 4 – 4-21, the Record, *hereinafter*, "R. at __."

his alleged disability onset, and forty-six at the time of his application for benefits. (R. at 175). He was six feet and seven inches tall[2], and weighed 435 pounds. (R. at 178). Plaintiff graduated from the twelfth grade in 1985, and earned an associate's degree for CAD in 2004 from Triangle Tech. (R. at 39, 179). Plaintiff's last job as a CAD drafter for Northrup Grumman ended in March 2009. (R. at 180). He was previously employed by Sony as an expediter. (*Id.*). Plaintiff has, at all relevant times, resided with his wife. (R. at 36 – 37). He reported no personal income since his disability onset. (R. at 37).

Plaintiff was denied DIB on April 3, 2014. (R. at 110 – 14). He thereafter challenged the initial determination, and a hearing was scheduled for April 14, 2016. (R. at 115 – 16, 123 – 35). Plaintiff appeared at the hearing, represented by counsel, and testified that he did not leave his employment with Northrup Grumman in March 2009 due to physical health, but because he was relocating from Virginia to Pennsylvania to get married and reside with his wife. (R. at 38 – 39). Nevertheless, he claimed that a number of physical impairments prohibited him from maintaining full-time work following his departure from Northrup Grumman, including: joint degeneration, obesity, diabetes, and hypertension. (R. at 39 – 40). Plaintiff explained that, as a result of these impairments, he experienced significant pain with minimal physical activity, was easily fatigued, and had limited range of motion in his joints and spine. (R. at 39 – 41).

With respect to his complaints of pain, generally, Plaintiff admitted that he did not participate in any pain management therapies, and used only over-the-counter analgesics when needed. (R. at 41 – 42). For pain emanating from his back, specifically, Plaintiff previously sought treatment with a chiropractor, which he claimed provided "a little" help. (R. at 41). He also sought treatment with a podiatrist in 2011 for bone spurs in his feet, and received cortisone

---

[2] At his administrative hearing before the ALJ, Plaintiff describes his height as between six feet and one and six feet and two inches. (R. at 52).

injections. He did not return for any follow-up. Plaintiff claims to continue to experience pain in his feet, including nerve pain attributable to his diabetes. (R. at 48).

Plaintiff had been told that weight loss would help to alleviate much of his pain; however, he asserts that his diabetes and diabetic medication has made this difficult. (R. at 40, 43). No surgical interventions were ever recommended by treating medical sources to aid in losing weight[3]. Plaintiff claimed to have attempted low-impact exercise in the past, and presently adheres to a specific diet, but with mixed results. (R. at 43).

In terms of daily tasks, Plaintiff keeps his activity to a minimum. (R. at 45). He does no yard work. (R. at 46). He assists with laundry and putting away dishes, but not with cooking, cleaning, or grocery shopping. (R. at 46, 49 – 50). Walking across the house with a basket full of laundry causes back pain, and Plaintiff cannot put away heavy casserole dishes above the level of his head. (R. at 46, 50). Plaintiff no longer hunts or goes fishing, and is limited by his inability to stand when he goes to the firing range. (R. at 50, 52). He is still capable of cleaning his guns. (R. at 53).

In terms of functional limitations, Plaintiff stated that he can stand in place for approximately fifteen to twenty minutes before needing to sit. (R. at 46 – 47). He can sit for approximately thirty minutes before changing his position. Plaintiff tires easily when climbing stairs, and has to stop to rest at least once just to walk about a block-and-a-half. (R. at 47). Walking more than fifteen to twenty feet at a time causes joint pain; although Plaintiff can handle shorter distances without issue. (R. at 40, 46). He also has no issues with gripping with his hands. (R. at 49). His ability to hold and lift objects is limited solely by joint and back pain, particularly if he must lift items above the level of his waist. (R. at 49).

---

[3] At a consultation with Edward T. Szabo, M.D., on June 28, 2011, Plaintiff was counseled about his need to lose weight, and it was suggested that he consider gastric bypass surgery if no progress was made in six months' time. (R. at 557 – 58).

3

Following Plaintiff's testimony, the ALJ asked the vocational expert whether a hypothetical person of Plaintiff's age, educational level and work background would be eligible for a significant number of jobs in existence in the national economy if limited to sedentary work involving: sitting for six hours with the ability to stand for five minutes every twenty-five minutes; standing or walking for two hours with the ability to sit for five minutes every twenty-five minutes, with walking not to exceed fifteen minutes at a time; operating foot controls only occasionally; occasional bilateral reaching, but never overhead; occasional use of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; occasional balancing, but no kneeling or crawling; and, occasional exposure to humidity, wetness, extreme heat and cold, and vibration, but not unprotected heights or moving mechanical parts. (R. at 57 – 58). The vocational expert responded that such a person would be capable of performing Plaintiff's past work as a CAD drafter, but also as a "patient scheduler," with 14,000 such jobs available in the national economy, as a "personnel scheduler," with 16,000 jobs available, as a "scanner operator," with 32,000 jobs available, as an "addresser," with 5,000 jobs available, as a "table worker," with 1,700 jobs available, as a "data entry clerk," with 218,000 jobs available, or as a "customer service representative," with 258,000 jobs available. (R. at 60 – 61).

The ALJ posed a second hypothetical asking the vocational expert to assume the same limitations, with the addition of the total inability to climb ramps and stairs. The vocational expert indicated that his response would not change. (R. at 61). The ALJ then posed a third hypothetical with the same limitations, but added that the individual could never be exposed to humidity, wetness, and extreme heat and cold, and would be absent from work two days per month. The vocational expert stated that no jobs would be available to such a person. (R. at 64). Plaintiff's attorney followed up by asking the vocational expert whether an individual with the

need to raise his legs to waist level for at least half of the work day would be eligible for any jobs. The vocational expert explained that the need to elevate the legs twelve to eighteen inches is generally acceptable, but that the need to raise the legs to waist level would eliminate eligibility for all jobs. (R. at 65).

The Administrative Law Judge ("ALJ") ultimately issued a decision denying benefits to Plaintiff on May 11, 2016, concluding that Plaintiff's credibly established functional limitations did not render him unable to engage in substantial gainful activity. (R. at 12 – 22). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on July 10, 2017, making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 5). Plaintiff then filed a Complaint in this court on August 31, 2017. (ECF No. 1). Defendant filed an Answer on November 3, 2017. (ECF No. 3). Cross motions for summary judgment followed. (ECF Nos. 10, 12). The matter has been fully briefed. (ECF Nos. 11, 13).

### III. STANDARD OF REVIEW

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. § 404.1520.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's

impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 – 06 (3d Cir. 2008).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. § 405(g)[4]; *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart,* 312 F. 3d 113, 118 (3d Cir. 2002).

"Substantial evidence is defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. *Thomas v. Comm'r of Soc. Sec. Admin.*, 625 F.3d 798, 800 (3d Cir. 2010) (quoting *Plummer v. Apfel*, 186

---

[4] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

6

F.3d 422, 427 (3d Cir. 1999)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 390 (1971). When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Trauterman v. Colvin*, 1 F.Supp.3d 432, 435 (W.D. Pa. 2014); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1191 (3d. Cir. 1986); *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (where substantial evidence supports a decision, the court will not overturn it, even if in disagreement).

V. DISCUSSION

In the decision, the ALJ concluded that Plaintiff suffered medically determinable severe impairment in the way of: coronary artery disease and hypertension, status post stenting, status post myocardial infarction; degenerative disk disease of the lumbar spine; degenerative joint disease of the knees, hips, and shoulders; plantar calcaneal spurring; type II diabetes mellitus; and, morbid obesity. (R. at 14). As a result of said impairments, the ALJ found that Plaintiff would be limited to sedentary work involving: lifting and carrying less than ten pounds frequently and up to ten pounds occasionally; sitting for up to six hours with the ability to alternate with standing for five minutes every twenty-five minutes; standing for two hours with

the ability to alternate with sitting for five minutes every twenty-five minutes; walking for about two hours, but for no more than fifteen minutes at a time and with the ability to alternate with sitting every twenty-five minutes; pushing and pulling as much as able; occasionally using bilateral lower extremities to operate foot controls; occasionally using bilateral upper extremities to engage in all types of reaching, with the exception of overhead reaching; occasionally balancing, but never crawling, kneeling, or climbing ropes, scaffolds, ramps, or stairs; frequent exposure to vibrations; occasional exposure to weather, humidity, wetness, and extreme heat and cold, but no exposure to unprotected heights and moving mechanical parts; and, no operation of a motor vehicle. (R. at 16). Based upon the testimony of the vocational expert, the ALJ determined that Plaintiff was capable of engaging in a significant number of jobs in existence in the national economy. (R. at 22).

Plaintiff objects to the decision of the ALJ, arguing that he erred in failing to give full credit to the medical findings of treating physician Michael Weinberg, M.D., resulting in an inaccurate determination regarding Plaintiff's residual functional capacity. (ECF No. 11 at 10 – 12). On May 25, 2013, Dr. Weinberg completed a Physical Medical Source Statement on behalf of Plaintiff. (R. at 408 – 411). In it, Dr. Weinberg noted that he had treated Plaintiff for approximately four years, and had seen Plaintiff every three or four months during that period. He listed Plaintiff's diagnoses as hypertension, diabetes, bone spurs, and obesity. Plaintiff's symptoms stemming from these conditions included joint pain, fatigue, lack of strength and energy, impaired mobility, and low back pain. The pain in Plaintiff joints was characterized as moderate-to-severe, and was located in the knees, hips, ankles, feet, and shoulders. (R. at 408).

On a check-box form, Dr. Weinberg indicated that Plaintiff could sit not more than 1 hour before needing to change position, could stand no more than twenty minutes before needing

to change position, could sit, stand, and walk less than two hours of an eight-hour work day, and would need to take an unspecified number of unscheduled breaks for fifteen to twenty minutes. (R. at 409). When sitting, Plaintiff would need to elevate his legs ninety degrees, for at least fifty percent of the work day, and would occasionally require the help of a cane to ambulate. Plaintiff could rarely lift up to twenty pounds, but could occasionally lift less than ten. He could rarely twist, crouch, squat, or climb stairs, and could never stoop, bend, or climb ladders. Plaintiff was believed to have "significant limitations with reaching, handling, and fingering. (R. at 410). Dr. Weinberg also checked off boxes indicating that Plaintiff would be off task at least twenty-five percent of any given work day, and would only be capable of low-stress work. He concluded by writing that Plaintiff would be incapable of tolerating extreme cold or heat. (R. at 411).

In his decision, the ALJ accorded these findings minimal weight. While acknowledging that Dr. Weinberg had treated Plaintiff for several years, the ALJ found that Plaintiff's descriptions of his own daily activities, as well as the contents of Dr. Weinberg's treatment notes, were not reflective of the level of functional impairment described in the Physical Medical Source Statement. (R. at 21). Plaintiff disputes this characterization of the record.

It is well-established that a treating physician's opinions are entitled to great weight where the physician's findings regarding functional capacity are based upon continuing observation of a patient's condition over a prolonged period of time. *Brownawell v. Comm'r of Soc. Sec.*, 554 F. 3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000)); *Plummer v. Apfel*, 186 F. 3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler* 826 F. 2d 1348, 1350 (3d Cir. 1987)). However, it is also true that a showing of contradictory evidence and an accompanying explanation will allow an ALJ to reject a treating physician's opinion

9

outright, or accord it less weight. *Id.* In cases in which there are conflicting medical findings, "the ALJ is not only entitled but required to choose between them." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

Looking to Plaintiff's treatment records with Dr. Weinberg, the Court observes that in medical records from May 9, 2014[5], Dr. Weinberg observed that Plaintiff had improved his obesity and was attempting to follow a diet, but that he had not been exercising and was not following a formal weight loss program. (R. at 500). Plaintiff's hypertension was stable, and his diabetes was stable/improving. (R. at 500, 502). He denied medication side effects. (R. at 500). Physical examination revealed Plaintiff to be alert and in no acute distress; with the exception of pitting edema on the ankles, no abnormalities were noted. (R. at 501). No other pertinent narrative findings were provided.

On September 12, 2014, Dr. Weingberg observed Plaintiff's hypertension and coronary artery disease to be stable, and his diabetes to be stable/improved. (R. at 494, 497). Plaintiff reported some fatigue, tingling, and muscle weakness. (R. at 494). Physical examination revealed Plaintiff to be alert and in no acute distress. No physical abnormalities were noted. (R. at 495). No other pertinent narrative findings were provided.

On December 14, 2014, Dr. Weinberg found Plaintiff's diabetes to be stable/improving with his current treatment regimen. (R. at 503, 505). He complained of no medication side effects. (R. at 503). Plaintiff's hypertension and coronary artery disease were also stable. (R. at 503, 505). Physical examination revealed Plaintiff to be in no acute distress, with no physical abnormalities and normal motor strength. (R. at 504). A recent x-ray of the right knee showed no acute fracture or joint effusion with questionable mild joint space narrowing. (R. at 505). No other pertinent narrative findings were provided.

---

5     These appear to be the earliest narrative treatment notes by Dr. Weinberg in the record before the Court.

On December 23, 2014, Dr. Weinberg recorded that Plaintiff's hypertension, diabetes, and coronary artery disease were stable. (R. at 487, 491). Plaintiff reported some fatigue, but no other issues. (R. at 487). Physical examination revealed Plaintiff to be alert and in no acute distress. No physical abnormalities were noted. (R. at 488). No other pertinent narrative findings were provided.

On April 3, 2015, Dr. Weinberg recorded that Plaintiff's hypertension, diabetes, and coronary artery disease were stable. (R. at 479, 483). There were no complaints of fatigue, muscle weakness, or tingling. (R. at 479). Physical examination revealed Plaintiff to be alert and in no acute distress. With the exception of pitting edema on the ankles, no physical abnormalities were noted. (R. at 488). No other pertinent narrative findings were provided.

On August 28, 2015, Dr. Weinberg examined Plaintiff and indicated that his hypertension, diabetes, and coronary artery disease were stable. (R. at 473, 477). Plaintiff reported foot numbness and tingling, but not fatigue or weakness. (R. at 473). Physical examination revealed Plaintiff to be alert and in no acute distress. With the exception of pitting edema on the ankles, no physical abnormalities were noted. (R. at 474). No other pertinent narrative findings were provided.

On November 20, 2015, Plaintiff was again seen by Dr. Weinberg. His hypertension and coronary artery disease were noted to be stable, and his diabetes was stable/improved. (R. at 466, 470). While Plaintiff complained of foot numbness and tingling, he did not report fatigue or weakness. (R. at 466). Physical examination revealed Plaintiff to be alert and in no acute distress. With the exception of pitting edema on the ankles, no physical abnormalities were noted. (R. at 467). No other pertinent narrative findings were provided.

On February 26, 2016, Dr. Weinberg recorded that Plaintiff's diabetes and coronary artery disease were stable. (R. at 574, 576). Physical examination revealed Plaintiff to be alert and in no acute distress. No physical abnormalities were noted. (R. at 575). No other pertinent narrative findings were provided.

Plaintiff does not indicate how these medical treatment records from Dr. Weinberg support the severe functional limitations assessed by Dr. Weinberg in his Physical Medical Source Statement. Plaintiff merely asks this Court to accept the limitations findings based solely upon Plaintiff's history of treatment with Dr. Weinberg and nothing more. However, a treating physician's opinion on the nature and severity of an impairment is only entitled to significant weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with other evidence on record. *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). A medical opinion is not entitled to any weight if it is without such objective support from the medical record. *Plummer*, 186 F. 3d at 430 (citing *Jones v. Sullivan*, 954 F. 2d 125, 129 (3d Cir. 1991)).

Moreover, evidence contradicting a medical source opinion further diminishes its weight. *Brownawell*, 554 F. 3d at 355. In his decision, the ALJ analyzes the opinions of state agency evaluator Paul Reardon, M.D., and consultative examiner Stephen Wynert, M.D. (R. at 20 – 21). Following a review of the medical record, Dr. Reardon completed a Residual Functional Capacity Assessment on April 3, 2014, in which he concluded that Plaintiff suffered impairment in the way of morbid obesity, coronary artery disease, diabetes mellitus with neuropathy, hypertension, mild degenerative joint disease of the right knee, a small left inferior calcaneal spur, and a history of tobacco use. (R. at 102). As a result, Plaintiff was believed capable of the following: occasionally lifting and carrying twenty pounds; standing or walking for three hours

of an eight-hour work day; sitting six hours; pushing and pulling without limitations; occasionally climbing ramps and stairs, but never ladders, ropes, or scaffolds; and, occasionally balancing, stooping, kneeling, crouching, and crawling. (R. at 101).

Following a physical examination of Plaintiff, Dr. Wynert issued an opinion on Plaintiff's functional capacity on January 21, 2014. Dr. Wynert observed Plaintiff to be in no acute distress. Plaintiff was obese and had trace edema in his extremities. There was positive lumbar spinal point tenderness and paravertebral tenderness bilaterally. There was tenderness of the bilateral hips and knees, but no effusion or swelling. Crepitus was present in both knees, but only mild pain was noted. Tenderness was observed in both shoulders, and pain was exhibited with passive abduction and external rotation against resistance. (R. at 382). Straight leg raising tests were negative. No muscular atrophy was seen, and motor strength was full in all upper and lower extremities. Plaintiff had normal sensation and grip strength, and was otherwise neurologically normal. He experienced pain when standing up, and used his arms for assistance. Plaintiff could not rise from a squatting position without help, and he walked with an observable limp and with pain. He could not walk on his heels or toes. (R. at 383).

In a Medical Source Statement of Ability to do Work-Related Activities, Dr. Wynert indicated that Plaintiff could never climb stairs, ramps, ladders, or scaffolds, or balance, stoop, kneel, crouch, or crawl. (R. at 388). Plaintiff could never be exposed to unprotected heights or moving mechanical parts. He could occasionally operate a motor vehicle, and endure exposure to humidity, wetness, and extreme heat and cold. He could manage frequent exposure to dust, odors, fumes, and pulmonary irritants, as well as vibrations. (R. at 389).

As discussed by the ALJ, these professional medical assessments do not parallel the severe findings made by Dr. Weinberg. In light of these medical assessments, and given the

paucity of findings in Dr. Weinberg's treatment notes on par with his findings in the Physical Medical Source Statement, the ALJ's decision to accord little weight to Dr. Weinberg's conclusions was supported by substantial evidence.

## VI. CONCLUSION

Based upon the foregoing, the ALJ engaged in sufficient discussion of the factual record to provide substantial evidence in support of his ultimate disability decision. Accordingly, Plaintiff's Motion for Summary Judgment is denied, Defendant's Motion for Summary Judgment is granted, and the decision of the ALJ is affirmed. An appropriate Order follows.

*/s/ Lisa Pupo Lenihan*
Lisa Pupo Lenihan
United States Magistrate Judge

Dated: August 14, 2018.
cc/ecf: All counsel of record.